## AFFIDAVIT OF THOMAS L. OHLSON

I, Thomas L. Ohlson, having been duly sworn, do state as follows:

1. I am a Special Agent with United States Immigration and Customs Enforcement ("ICE"), formerly the United States Immigration and Naturalization Service, ("INS") and have been so employed since April 1999. Among other duties, I am assigned to investigate the manufacture and sale of fraudulent resident alien cards, which are also known as Forms I-551, or "green cards." From my experience and training, I know that persons, usually aliens, manufacture and distribute counterfeit green cards, as well as counterfeit social security account number cards ("social security cards") and other false identification documents. The counterfeit documents are then sold to aliens who are illegally in the United States or who do not have permission to work in the United States. I am familiar with the various criminal statutes pertaining to the enforcement of immigration laws, including Title 18, United States Code, Section 1028(a)(2), which makes it unlawful, among other things, to knowingly transfer a false identification document knowing that such document was produced without lawful authority.

2. I submit this affidavit in support of an arrest warrant and a criminal complaint against Edson, whose last name is unknown, ("Edson LNU"), for violating Title 18, United States

1

Code, Section 1028(a)(2).

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and agents of this service, as well as information provided to me by a confidential informant ("CI") and a cooperating witness ("CW"). This affidavit is not intended to set forth all of the information that I and other law enforcement personnel have learned during this investigation, but rather consists of that information necessary to provide the requisite probable cause.

4. On September 18, 2004, I received information from the CI that Edson LNU was selling fraudulent green cards and social security cards for $80.00 per card. The CI said Edson LNU lived in Allston, Massachusetts, and had telephone number (617)980-9655.

5. On September 21, 2004, at my direction, the CW, (not the CI who initially provided the tip), placed a recorded telephone call to Edson LNU at (617) 980-9655. As a result of the call, Edson LNU agreed to sell the CW two "papers" for $150.00 per set. No order of documents was placed by the CW at that time.

6. Thereafter, on eight occasions, beginning in October 2004 and continuing to March 2005, the CW, under the direction of the affiant, other Boston ICE fraud group agents and other law enforcement officials, has met with Edson LNU, and purchased

fraudulent green cards and social security cards from him. On each of these occasions, the purchases were made hand-to-hand and the CW was equipped with electronic monitoring and recording devices. In total, the CW has purchased twenty fraudulent green cards and twenty fraudulent social security cards from Edson LNU. I have reviewed the documents and have determined that they are counterfeit identification documents.

    7.    The most recent transaction, which occurred on March 30, 2005, is set forth in detail here:

    a) On March 27, 2005, Edson LNU placed a telephone call to the CW and left a voice message stating that his telephone was broken and that he could be reached at (617) 987-8253.

    b) On March 28, 2005, Edson LNU telephoned and spoke to the CW. The call was not recorded and not monitored by ICE agents. During the call, Edson LNU confirmed to CW that his phone was broken and that he could be reached at (617) 987-8253. The CW told Edson LNU that the CW wanted two or three sets of documents to be made and agreed to call Edson LNU when the CW could meet with Edson LNU for the documents.

    c) On March 29, 2005, at about 11:50 a.m., the CW placed a consensually monitored and recorded telephone call to Edson LNU at (617) 987-8253 to arrange a document purchase from Edson LNU on March 30, 2005 in Allston, Massachusetts. The CW left a voice message for a return call. At about 12:21 p.m., the CW received

a non-monitored, non-recorded telephone call from Edson LNU. As a result of this call, the document purchase was scheduled for March 30, 2005, at the Café Belo restaurant parking lot, located at 181 Brighton Avenue, in Allston, Massachusetts.

  d) On March 30, 2005, at about 3:45 p.m., other ICE agents and I met with the CW in Allston and provided the CW with three green-card style photographs to give to Edson LNU for the manufacture of three sets of fraudulent documents, that is, a green card and a social security card for each of the three persons in the photographs. The CW was told to put a name and date of birth on the reverse side of each photograph. The CW was equipped with electronic monitoring and recording devices for the meeting with Edson LNU.

  e) At about 4 p.m., ICE agents established surveillance near the Café Belo restaurant and parking lot in Allston. The CW made another consensually monitored recorded call to Edson LNU and confirmed that the CW wanted three sets of documents and that the CW would be at the meet location at 4:30 p.m.

  f) At about 4:20 p.m., ICE agents saw the CW's car enter the parking lot at 181 Brighton Avenue, Allston, Massachusetts. The CW was under continuous surveillance since being provided the three photographs as described above. Before the CW parked, Edson LNU-the same individual who had sold documents to the CW on each of the prior occasions described in paragraph 6- was seen

operating a red Ford Contour, bearing Massachusetts registration number 24TF22, in the same parking lot. Both individuals were observed speaking to each other as they remained in their vehicles. Both vehicles then left the lot through the back entrance and were briefly lost in traffic by ICE surveillance.

g) According to a later debriefing of the CW, the CW and Edson LNU drove to the Belo Market on Cambridge Street which is generally across the street from the Café Belo restaurant. Edson LNU got into the CW's car and the CW gave Edson LNU the three photographs. Edson told the CW that the documents would be ready at 7 p.m. The audio recording of the transaction, as translated from Portuguese, reveals several references to meeting again at 7 p.m.

h) At about 4:38 p.m., ICE agents located the Ford Contour (without passengers) parked at 181 Brighton Avenue, Allston, which is the lot of the Café Belo restaurant.

i) At about 5 p.m., Edson LNU was seen by ICE agents leaving the Café Belo restaurant and getting into the Ford Contour. He drove from Café Belo to 85 Pine Street, Stoneham, Massachusetts.

j) At about 6:40 p.m., another ICE agent and I met with the CW in Allston and provided the CW with $480.00 for the purchase of the fraudulent documents. In addition, the CW was provided with electronic monitoring and recording devices for the subsequent meeting with Edson LNU to obtain the fraudulent

documents.

k) ICE agents at the Stoneham location saw Edson LNU leaving there in the Ford Contour at about 6:46 p.m. Edson LNU was followed from there to the Belo Market, on Cambridge Street, in Allston. The CW, who was under continuous ICE surveillance since being provided the $480, got into the Ford Contour with Edson LNU.

l) According to a later debriefing of the CW, Edson LNU took an envelope from under his seat and showed the documents to the CW. Edson LNU then gave the envelope containing the documents to the CW and the CW gave him the $480. In the audio recording of the transaction, as translated from Portuguese, Edson LNU is heard telling the CW to call him if there is something wrong and it will be "fixed" and further states that "We are here for anything that you might need."

8. Other ICE agents and I met with the CW after the transaction and took custody of the three sets of fraudulent documents, that is: a green card and social security card in the name of Daniel DE OLIVEIRA; a green card and social security card in the name of Janio Paula MELO; and a green card and social security card in the name of Elizeu Pereira DA SILVA. The green cards bore the photos provided to the CW as described in paragraph 7(d).

9. On these green cards, as well as on the other 17 green

6

cards purchased from Edson LNU, the identical alien registration number appears, that is, A752 301 542. A check of the ICE database revealed that this number is invalid. The three social security cards, as well as the 17 other social security cards purchased by the CW from Edson LNU, bore numbers which were either invalid or belonged to an individual other than the person named on the social security card.

10. Based on the facts set forth above, I believe there is probable cause to conclude that on March 30, 2005, Edson LNU did knowingly transfer false identification documents knowing that such documents were produced without lawful authority, in violation of Title 18, United States Code, Section 1028(a)(2).

_____
Thomas L. Ohlson
Special Agent
United States Immigration
    and Customs Enforcement

Subscribed and sworn to before me this 17th day of May, 2005.

_____
MARIANNE B. BOWLER
United States Magistrate Judge